NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4544
_____

AI WANG,
                              Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A088-794-087)
Immigration Judge: Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 13, 2012
Before: SLOVITER, GREENAWAY, JR., AND COWEN, Circuit Judges

(Opinion filed: June 14, 2012)
_____

OPINION
_____

PER CURIAM

Ai Wang ("Wang") petitions for review of the Board of Immigration Appeals'

final order of removal. For the reasons that follow, we will deny the petition for review.

Wang, a native and citizen of China, crossed the border at Hidalgo, Texas, on

April 16, 2008. She was served with a Notice to Appear on May 23, 2008, which

charged that she is removable under Immigration and Nationality Act ("INA")

§ 212(a)(7)(A)(i)(I), 8 U.S.C. § 1227(a)(7)(A)(i)(I), as an alien not in possession of valid

entry documents at the time of admission. It is undisputed that Wang is removable as charged.

After being served with the NTA, Wang filed an application for asylum, INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution on account of her Christianity, and, specifically, her attendance at an underground, or unregistered, church in Fuzhou, China in April, 2006. Wang stated in her application that, in August, 2007, police broke into her church service and arrested some of the members; she was able to escape. After this incident, the police came to her home, seeking to arrest her; she was able to avoid arrest by relocating to her cousin's house in another village. She later learned that some church members who were arrested were detained for a number of months.

At a merits hearing before the Immigration Judge on March 8, 2010, Wang testified that she is a Christian, that she began attending church in China in April, 2006, and that her church was a disfavored "underground" church. She testified about the August, 2007 incident described in her application, and she testified that one of her very good friends was arrested, detained, and beaten up. She testified that the police came to her home after this incident. She testified that she now attends the Grace Church in New York City almost every week, and is happy to be able to spread the Gospel. She testified that she is afraid she will be arrested for practicing her religion if she returns to China. On cross-examination, Wang admitted that she joined the Grace Church only after she was placed in removal proceedings, A.R. 121, and she contradicted her direct testimony in numerous ways, both big and small.

2

Wang also submitted with her asylum application a letter dated September 28, 2009 from Qing Ling Chen, who took Wang to the underground church in 2007 and was among those who were arrested. Chin stated that she (Chin) had been interrogated and beaten. In addition, Wang submitted a "fill-in-the-blanks" form letter from "The Church of Grace to Fujianese: NY, Inc.," which stated that Wang had attended services since November, 2008; an affidavit from her brother dated February 23, 2010, in which he stated that Wang was afraid she would be arrested in China because of her faith; the 2007 State Department Religious Freedom Report on China; several articles about China's crackdown on "house" churches; and the 2009 Report of the Congressional-Executive Commission on China.

Also at her merits hearing, Wang's brother, Kung Liang Wang, testified that Wang attends the Grace Church in New York, and that his sister-in-law, whose name he did not know, told him that authorities in China are still looking for Wang. During his testimony, Wang whispered something to him. Wang's other brother, Kung Li Wang, a Buddhist, testified that he thought his sister's religion was Christianity, and that, to his knowledge, she attends church.

The IJ denied all relief, determining that Wang failed to satisfy her burden of proof because her testimony was not credible, and because she failed to corroborate her allegations with reasonably available evidence. The IJ determined that Wang's answers were brief, confusing or non-responsive, and her demeanor was unconvincing. The IJ determined that Wang did not adequately corroborate her assertion that she attended church regularly in the United States, and that her explanation for this failure did not elucidate matters, but, rather, tended to obfuscate. Also of particular importance, Wang

3

claimed that her sister-in-law in China told her that the police were looking for her after she left China, but Wang did not provide an affidavit from her sister-in-law, and her excuse that her sister-in-law could not write did not explain why someone else could not have written out the statement for her. Wang's brother's testimony about when she joined Grace Church in the United States was contradicted by the Grace Church form letter itself. The IJ ordered Wang removed to China.

In a decision dated December 9, 2011, the Board of Immigration Appeals dismissed Wang's appeal. The Board, citing 8 U.S.C. § 1158(b)(1)(B)(iii), among other authorities, concluded that the IJ's adverse credibility determination was not clearly erroneous in that it was based on inconsistencies between Wang's testimony and her written documentation, as well as her unconvincing demeanor. The Board relied on the inconsistency between Wang's brother's testimony and Wang's letter from the Grace Church on the subject of exactly when she began to attend services at that church. In addition, like the IJ, the Board pointed out numerous other inconsistencies, both big and small. The Board also agreed that Wang, even if credible, could have and should have provided "specific persuasive testimony or objective corroborating evidence." A.R. 4. The Board agreed with the IJ about the need for an affidavit from Wang's sister-in-law, and about the weakness of Wang's excuse for not supplying one. The Board concluded that Wang did not possess a well-founded fear of persecution in China, because there was no credible, persuasive proof that government officials had any current interest in her, among other things.

Wang petitions for review of the Board's decision. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). In her brief, Wang argues that she credibly established past

4

persecution and a well-founded fear of persecution. She sufficiently met her burden of proof, and the corroboration required by the agency was either not reasonable to expect or related to facts already corroborated by the record. She argues that it was not reasonable for the IJ to demand corroboration from her sister-in-law because there is no proof that her sister-in-law has access to a person who could write a letter for her, see Petitioner's Brief, at 21-22, and not reasonable for the IJ to demand corroboration from other Grace Church members because she provided other evidence of her church attendance, see id. at 23, 25-26. She argues that her demeanor did not provide support for the IJ's adverse credibility determination, see id. at 28-30, and that the inconsistencies found by the IJ were not supported by the record, see id. at 34-35.

We will deny the petition for review. Where the Board adopts specific aspects of the IJ's analysis, we have authority to review both decisions. See Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). An applicant for asylum has the burden of credibly and persuasively establishing that she is unable or unwilling to return to her home country "because of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); see 8 C.F.R. § 1208.13(a); Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001). An alien who establishes past persecution enjoys a presumption of a well-founded fear of future persecution, Lukwago v. Ashcroft, 329 F.3d 157, 174 (3d Cir. 2003), but, if the alien cannot show past persecution, she may still establish a well-founded fear of future persecution by demonstrating a subjective fear of persecution, and that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003).

5

Factual determinations made by the agency are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Whether an applicant for asylum has demonstrated past persecution or a well-founded fear of persecution is a factual question which is reviewed under the substantial evidence standard. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Adverse credibility determinations are reviewed under the substantial evidence standard. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Under this deferential standard of review, we must uphold the credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Under the REAL ID Act, which applies here, the IJ may base the credibility determination on the totality of the circumstances, 8 U.S.C. § 1158(b)(1)(B)(iii), which includes, among other things, "the demeanor, candor, or responsiveness of the applicant or witness," and "the consistency between the applicant's or witness's written and oral statements" and may do so "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." Id. Moreover, corroborating evidence may be required, especially where the applicant's testimony is not credible. Cf. at § 1158(b)(1)(B)(ii). Corroboration may be required where it is (1) reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure. Chukwu v. Att'y Gen. of U.S., 484 F.3d 185, 191-92 (3d Cir. 2007) (citing Toure v. Att'y Gen. of U.S., 43 F.3d 310, 323 (3d Cir. 2006). See also Sandie v. Att'y Gen. of U.S., 562 F.3d 246, 252-53 (3d Cir. 2009) (same).

6

Substantial evidence supports the agency's determination that Wang was not credible, a determination properly made on the basis of her demeanor and the inconsistencies between the testimony and the documentation she offered in support of her applications. Wang did not credibly and persuasively establish that she was persecuted in the past on account of religion. There were, as the agency determined, many inconsistencies, both big and small, in Wang's evidence. Wang's answers, particularly during cross-examination, were indeed non-responsive, and the IJ properly took into consideration Wang's overall demeanor and the fact that she was whispering to her brother and appearing to prompt him during the time in which he was testifying on her behalf.

The agency properly demanded corroboration from Wang, especially in view of the adverse credibility determination. Wang's form letter from the Grace Church was properly given little weight with respect to her current church attendance because it conflicted with her brother's testimony on the subject of when she began to attend services. Wang's explanation for her failure to obtain corroboration either from church officials or fellow parishioners regarding her church attendance was insufficient to establish that such evidence was unavailable. Wang's brother's testimony that he "thought" Wang was a Christian, and that it "seemed like" she went to church once or twice a week was properly given little weight.

To be sure, the IJ engaged in some minor speculation and conjecture. The IJ wondered whether religion really was an important part of Wang's life, id., but he did so in the context of finding Wang's demeanor odd and unconvincing. In discussing why he had trouble believing that Wang escaped the police in August, 2007 when her friend did

7

not, the IJ seemed surprised by her testimony which tended to imply that the local police were "insufficiently trained or insufficiently capable of securing the exits so that people did not get away," A.R. 79. The IJ's point, however, was that Wang's explanation for how she managed to escape was implausible in general, or, at the very least, confusing. Substantial evidence in the record supports the IJ's conclusion that some aspects of Wang's assertions about the August, 2007 events were vague and confusing (even though some other aspects were corroborated by her friend Qing Ling Chen's affidavit). There are inconsistencies in the record regarding the number of persons in attendance at this underground church service (many vs. a few), and Wang herself said only that she escaped "while there was such a big mess," A.R. 105. Accordingly, the IJ's speculations were not improper.

With respect to whether Wang had a well-founded fear of persecution, the agency determined that Wang's explanation for why her sister-in-law could not provide a written statement for her was insufficient, and the record does not compel a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B). In addition, the letter from Wang's friend, Qing Ling Chen, A.R. 183, provides no support for Wang's assertion that the police are now looking for her.

Because Wang failed to show past persecution or a reasonable fear of future persecution under the lower burden of proof required for asylum, she is necessarily ineligible for withholding of removal. See Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). In addition, the agency concluded that Wang did not meet her burden of establishing that it is more likely than not that she will

be tortured upon her return to China, 8 C.F.R. §§ 208.16, 208.18, and the record does not compel a different conclusion.

For the foregoing reasons, we will deny the petition for review.